INTERNATIONAL ASSOCIATION OF MACHINISTS AND AEROSPACE WORKERS, AFL–CIO, Plaintiff,

v.

ALITALIA–LINEE AEREE ITALIANE, S.P.A., Defendant.

No. 88 Civ. 4473 (RJW).

United States District Court, S.D. New York.

July 7, 1988.

Kevin P. Quill, Long Island City, N.Y., for plaintiff.

Richard Wilsker, New York City, for defendant.

## DECISION

MILTON POLLACK, Senior District Judge.

This is an application for a preliminary injunction pursuant to Rule 65 of the Federal Rules of Civil Procedure.

The plaintiff applied for an order to show cause containing a temporary restraining order on June 28, 1988. Judge Kram of this court denied the temporary restraining order and granted an order for an early hearing of this application for a preliminary injunction, and set July 7, 1988, before this court sitting in Part 1, for that hearing.

The case itself is assigned to the Honorable Robert J. Ward, who is presently unable to conduct the preliminary injunction hearing by reason of an ongoing commitment in a long pending and continuing trial of a criminal cause in this court.

The evidence has been heard and counsel have indicated their views as to the appropriateness of a preliminary injunction or lack thereof.

The Railway Labor Act, which applies to air carriers—see 45 U.S.C. Sections 181 to 182 (1982)—establishes separate procedures for resolving major and minor contractual disputes. Major disputes concern the formation or modification of collective bargaining agreements. No such dispute has been credibly presented to this court by sufficient or material evidence. Minor disputes, so-called, involve the application or interpretation of existing contracts. The resolution of minor disputes is within the exclusive jurisdiction of Labor Management System Boards of Adjustment, created pursuant to 45 U.S.C., Section 184 (1982).

Federal courts have no power to resolve disputes over the meaning of collective bargaining agreements in the airline industry, to the extent that the plaintiff's complaint simply sought relief based on its interpretation of the collective bargaining agreement. However, the Supreme Court has authorized federal courts to preserve the status quo pending resolution of a minor dispute by a System Board of Adjustment, where an injunction "rather than defeating the board's jurisdiction would operate to preserve that jurisdiction by preventing injury so irreparable that a decision of the board in the union's favor would be but an empty victory." A federal court may issue an injunction "to restore status quo in a minor dispute if the court's discretion is required to preserve the primary jurisdiction of the adjustment board."

The plaintiff is seeking a preliminary injunction to enjoin the defendant from engaging in various alleged existing employment practices which are wholly consistent with the collective bargaining agreements placed in evidence between the parties. The plaintiff alleges that Alitalia has changed the employee medical coverage, has granted job preference to part-time employees, in violation of the Railway Labor Act, and has violated the collective bargaining agreement by employing too many part-timers. The plaintiff also alleges that Joseph Cammarata was unjustly discharged because of his support for the union during a representation election held over three years ago, and has engaged in a campaign of anti-union animus by unfairly treating supporters of the plaintiff union.

It appears beyond question of doubt that the allegations concerning the medical reimbursement and part-timers are minor disputes within the meaning of the Railway Labor Act, and therefore subject to the exclusive jurisdiction of the Alitalia System Board of Adjustment. I will deal with the claims concerning Joseph Cammarata's reassignment and purported discharge separately.

The dispute over the number of part-timers which the defendant may employ rises over the interpretation—and I underscore interpretation—of paragraph 11 of a memorandum of agreement dated March 19, 1976, and reaffirmed in the parties' collective bargaining agreement of a later date, which states:

"Part-time personnel shall not number more than 15 percent of the total number of regular fulltime contract-covered employees employed in the (cargo warehouse and commissary) and"—and I underscore

"and," emphasis supplied—"(traffic department) at John F. Kennedy International Airport."

The calculation of the 15 percent is disputed. The witness for the union reads that to mean that 15 percent is to apply to the fulltimers in either the cargo or traffic department rather than 15 percent of the combined departments.

It has been established here that the plaintiff has twice grieved the company's interpretation of the permissible number of part-timers it could employ, first in 1986 and again in 1987. Shortly before this litigation and for the first time, the plaintiff asked the National Mediation Board to appoint an arbitrator, and that matter is pending.

The defendant points out that, consistent with its interpretation of this agreement, it has never employed more part-timers than 15 percent of the combined fulltime work force for the cargo, commissary and traffic departments.

The claim is made that job preferences have been given for part-time employees. That claim is supported by a contention that a separate bidding list for part-time employees has been set up which violates the part-time employee provision in the collective bargaining agreement by giving the part-time employees preference for shifts and days off. There is no substance to the position of the plaintiff in this regard. It has been established that the work shift of part-timers and fulltimers are not interchangeable. Part-timers work only four-hour shifts, while fulltime employees work eight-hour shifts, and no fulltimer can work a four-hour time slot. The consequence is that part-timers are not getting preferences for these shifts, rather they are the only persons or employees that can work these shifts.

The issue raised in connection with medical coverage just defies the laws of gravity. Plaintiff seems to allege that the defendant has changed the standard for medical insurance reimbursement. The proof is that the defendant has merely changed insurance carriers which process the medical claims and report to the company, which is a self-insurer, and, as is consistent with all such medical plans, and particularly Medicare, the greatest of the plans that we face in this country, the charges that are approved are those which are usual and customary in the geographical area where such services and supplies are provided. It is just plainly nonsensical to claim that medical charges which exceed reasonable, usual and customary price tags must be paid for by a carrier or a self-insurer not at the reasonable, ordinary and customary charges in that area for such services but at the whim of the particular professional who submits the excessive bill—excessive in the sense that the vicarious generosity involved in honoring such a claim which is excessive is not a basis on which an 80–20 reimbursement scheme is to be validated.

The evidence is clear here, for the purposes of this preliminary injunction matter, and possibly without prejudice to what could be shown in a tribunal which is authorized to handle the interpretation of the medical clauses, that there is no basis for emergency relief by way of a preliminary injunction.

Turning to the remaining claim, that on behalf of Joseph Cammarata, who was employed basically as a refunds representative at the defendant's main office located on Fifth Avenue in New York, called the 666 office, that being the address on the avenue, I could dispose of that matter very shortly on Mr. Cammarata's own testimony of complete unavailability today to go to work in any capacity with this company, by reason of his medical condition, which he has vividly described on the witness stand, and the results and duration of which are waiting on medical and neurological reports that are anticipated to come in shortly.

The evidence, through affidavits and the testimony that was adduced here, shows that, according to the company, in 1988 it was determined that the position of refunds representative would be eliminated, and consequently the two individuals, one of whom was Joseph Cammarata, who formerly held that classification were reassigned. The other one was reassigned to an accounting position after she displayed the necessary skills for the position. Cammarata was reassigned to the position of cargo office agent at the JFK International

Airport because of his administrative training while he was a refunds representative. Incidentally, Cammarata lives in Merrick, Long Island, which is convenient to JFK International Airport. My recollection is that it is about a 15–minute ride from Merrick to JFK.

The evidence or affidavits further show that late in February 1988, Cammarata was already advised that his position as a refunds representative was being eliminated and he was being transferred to the cargo office position, and thereafter that he received formal notification that his position was being eliminated effective May 1, 1988, and that he was being reassigned to cargo.

On May 1, Cammarata was sick. He did not report to work. When he failed to report to work or otherwise contact the company, exchanges of written communications occurred, the upshot of which was no acceptance of a different position by Cammarata and possibly notification that his services for the company were at an end.

Cammarata has given testimony here which for present purposes may be credited, until any other proceeding that may be necessary herein so requires, that he had 75 days of sick leave coming to him and that his remaining away from work is related to that fact, and that he is not dischargeable, accordingly. But he also has testified plainly that he is too sick to work now and if placed in a job today would not now go to work nor go to work until he is told by his medical advisers that he is fit for active work.

There really is nothing presented to the court that represents irreparable damage requiring injunctive relief in Cammarata's case, irrespective of the fact that Cammarata is not covered by the collective bargaining agreement and that other considerations might apply to circumstances not here present.

Federal courts have no power to resolve disputes such as those presented here over the meaning of collective bargaining agreements in this industry, and to the extent plaintiff's complaint seeks relief based on interpretations of the collective bargaining agreement, there is nothing before the court.

When it comes to the question of deciding whether protective relief should be given to an alleged status quo because of a presumed change in working conditions, there it is incumbent on the plaintiff to meet the requirements of Rule 65 and to show that there is a genuine indication of irreparable harm and a likelihood of success or sufficiently serious questions going to the merits to make them fair grounds for litigation.

There has been no credible showing here by any evidence and the plaintiff has failed to demonstrate, with credible, acceptable proof, that the System Board of Adjustment will not be able to provide the relief sought, if any is due, or that the union would suffer irreparable injury were there not a protective order issued by this court. There is nothing in this case that smacks of irreparable injury to the degree that a decision of the board in the union's favor would be an empty victory or one that requires a district court to address and preserve the jurisdiction of the primary adjustment board's jurisdiction.

Conclusory claims of anti-union animus do not establish subject matter jurisdiction. Accordingly, from the paucity of proof warranting injunctive relief, the court does find that the conditions for an injunction as set forth in the rules and the decisions interpreting those rules have been met, and the plaintiff's request for a preliminary injunction is in all respects denied.

The foregoing shall constitute the findings of fact and conclusions of law required by Rule 52. An order accordingly may be entered herein.

That concludes this matter.

This case now goes back to the judge from whence it came, with a notation endorsed on the order to show cause:

Motion for preliminary injunction is denied.

So ordered.